TOM LANGFORD, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 10477

September 27, 1979                    600 P.2d 231

*Morgan D. Harris,* Public Defender, and *Terrence M. Jackson,* Deputy Public Defender, Clark County, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *H. Leon Simon,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, C. J.:

Appellant Tom Langford was tried to a jury and convicted of robbery, one count of first degree kidnapping, two counts of second degree kidnapping, and the use of a deadly weapon in the commission of each of the said offenses.

He has appealed from his judgment of conviction seeking reversal on the grounds that (1) the district attorney failed to comply with a discovery order; (2) the district court improperly instructed the jury concerning eyewitness identification; (3) the district court erred by failing to instruct the jury that an inference adverse to the prosecution could be drawn from the failure of Woody Hamric to testify; and, (4) the district court improperly instructed the jury regarding the law of kidnapping.

### THE FACTS

At approximately 2:30 a.m. on October 19, 1976, Langford approached the rear door of a Las Vegas coffee shop and asked to see Woody Hamric, the dishwasher. In response to this inquiry, Sanford Walters, the manager of the coffee shop, instructed Langford to make his inquiry at the front of the shop. Immediately thereafter, Langford and Michael Clarke appeared in the front of the shop and told the waitress, Cynthia Walters, that they wished to see Hamric. Hamric then entered the front of the shop and Langford stated to Hamric that he had been sent to see about a job. Langford and Hamric then went to the rear of the shop to speak with Sanford Walters about applying for a job. When Sanford Walters turned to get Langford a job application, Langford displayed a firearm and ordered Hamric and Sanford Walters to the front of the shop. Upon arriving at the front of the shop, Langford ordered everyone, including five customers, to the back of the shop where he confined them in a walk-in freezer. Langford and Clarke then brought Cynthia Walters to the front of the shop where she was ordered to empty the cash register. She was then led back to the walk-in freezer, and Langford and Clarke fled. The eight persons in the freezer remained there for a few minutes, gaining release when Sanford Walters kicked down the freezer door.

Shortly after the robbery, Clarke was apprehended while

fleeing the scene. He was identified as one of the perpetrators by both Sanford and Cynthia Walters. The police then showed the Walters some mugbooks of possible suspects, but neither was able to identify the second perpetrator. On October 26, however, both of the Walters were individually shown a photo line-up, from which each immediately identified Langford as the second perpetrator.

## THE ISSUES

1. Prior to trial, the district court ordered the State to provide discovery of specified matter to appellant, including "[a]ll photographs shown in any photo arrays for identification purposes." Pursuant to this order, appellant was provided with copies of the photos used in the October 26 photo line-up. On cross-examination, Cynthia Walters stated that she had also looked at mugbooks after the incident in an attempt to identify the perpetrator. Thereafter, appellant moved for a mistrial contending the failure to provide the mugbooks violated the discovery order. The district attorney then stated that he was unaware the Walters had viewed the mugbooks, but would provide appellant with them. The district court denied the motion for a mistrial, and appellant contends this was error.

A trial court is vested with broad discretion in fashioning a remedy when, during the course of the proceedings, a party is made aware that another party has failed to comply fully with a discovery order. *See* NRS 174.295. Remedies available to the district court include the power to "permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances." *Id*. Here, the district court permitted inspection of the mugbooks by counsel for appellant, a remedy expressly sanctioned by NRS 174.295, and thus within the bounds of the court's discretion. We will not find an abuse of discretion in such circumstances unless there is a showing that the State has acted in bad faith, or that the non-disclosure results in substantial prejudice to appellant, and that such prejudice has not been alleviated by the trial court's order. *See* Maginnis v. State, 93 Nev. 173, 561 P.2d 922 (1977). *Cf*. United States v. Heiden, 508 F.2d 898 (9th Cir. 1974). In the instant case, it is apparent from the district attorney's statements at trial that the non-disclosure was inadvertent. Furthermore, even were we to assume the non-disclosure prejudiced appellant, the trial court alleviated this prejudice by allowing

inspection of the mugbooks at a time during the trial when appellant could, if he so elected, cross-examine witnesses concerning the mugbooks. Accordingly, we find no abuse of discretion in the order denying the motion for a mistrial.

2. Appellant next contends the district court erred by refusing to give his proposed instruction concerning his identification. We disagree.

It is well established that a court need not give a proposed instruction when the law encompassed in that instruction is substantially covered by other instructions given to the jury. *See* Collins v. State, 88 Nev. 168, 494 P.2d 956 (1972). Appellant's proposed instruction is a lengthy, and sometimes repetitive, account of the prosecutor's burden to establish his identification beyond a reasonable doubt and an enumeration of factors to be considered by the jury in determining whether identification has been established. The law set forth in appellant's proposed instruction, however, is substantially encompassed by two instructions actually given by the court.[1] Moreover, the instructions actually given on his identification are concise, accurate statements of the law, whereas the proposed instruction could well be considered too long and argumentative, and thus likely to confuse the jury. *See* People v. Guzman, 121 Cal.Rptr. 69 (Cal.App. 1975). Therefore, we perceive no error in the court's refusal to give the proposed instruction.

3. Woody Hamric, one of the victims of the kidnapping and robbery, was not called as a witness by the State. Appellant proposed an instruction to be given to the jury which stated that the jury may presume from the failure of a material witness to testify that the testimony would have been favorable to appellant. Appellant argues that the trial court erred by refusing to give this instruction. We disagree.

In our prior decisions, we have rejected a similar instruction. *See* State v. Economy, 61 Nev. 394, 130 P.2d 264 (1942). Notwithstanding this rejection, appellant argues the instruction is mandated by NRS 47.250(3) and (4), which establish the following disputable presumptions:

3. That evidence willfully suppressed would be adverse if produced.

4. That higher evidence would be adverse from inferior being produced.

---

[1] Instruction 25–A clearly states that the identification of the accused must be established beyond a reasonable doubt. Instruction 26 gives a general account of factors that may be considered in determining the credibility of witnesses.

A presumption such as that found in NRS 47.250(3) will arise only where the witness is available to testify and the circumstances create a suspicion that the failure to call the witness has been a willful attempt to withhold competent evidence. *See* State v. Nelson, 386 P.2d 142 (Wash. 1963). Here, the record indicates that efforts to locate Hamric by both the district attorney and appellant's counsel had proved fruitless. Further, there is no evidence that Hamric's testimony was willfully suppressed. Because the record indicates that the witness could not be located, and that there is no evidence of willful suppression, NRS 47.250(3) provides no basis for the proposed instruction.

Appellant's contention that the instruction is mandated by NRS 47.250(4) is similarly without merit. Presumptions similar to that found in NRS 47.250(4) obtain only where it can be shown that a party actually has in his possession better and stronger evidence than that which was presented. *See* People v. Taylor, 136 Cal.Rptr. 640 (Cal.App. 1977). Even were we to assume that Hamric's testimony would have comprised better and stronger evidence, the fact that neither party could locate him renders such instruction inapposite.

4. Appellant also argues that the convictions on the three counts of kidnapping should be reversed because the jury was improperly instructed concerning the law of kidnapping. In particular, the appellant objects to an instruction given which stated that no minimal distance of asportation need be established in order for kidnapping to lie.[2] In order to determine whether the kidnapping instruction was proper in this case, we

---

[2]The trial court gave the following instructions regarding the law of kidnapping.

"Instruction No. 19.

"Every person who shall willfully seize, confine, inveigle, entice, decoy, abduct, conceal, kidnap or carry away any individual human being by any means whatsoever with the intent to hold or detain, or who holds or detains, such individual for the purpose of committing robbery upon or from such individual, shall be deemed guilty of Kidnapping in the First Degree.

"Instruction No. 20.

"Every person who shall willfully and without authority of law seize, inveigle, take, carry away or kidnap another person with the intent to keep such person secretly imprisoned within the State, or for the purpose of conveying such person out of the State without authority of law, or in any manner held to service or detained against his will shall be deemed guilty of Kidnapping in the Second Degree.

"Instruction No. 21.

"The law does not require that the victim be carried away for a minimum distance. It is the fact, not the distance, of forcible removal of the victim that constitutes kidnapping."

turn to examine our recent decisions on the law of kidnapping, and application of those decisions to this case.

In Wright v. State, 94 Nev. 415, 581 P.2d 442 (1978) we held that where the accused is convicted of first degree kidnapping and the associated offense of robbery, the kidnapping conviction would not lie if the movement of the victim was incidental to the robbery, and did not increase the risk of harm to the victim beyond that necessarily present in the robbery. In the recent decision of Jefferson v. State, 95 Nev. 577, 599 P.2d 1043 (1979), we limited the application of the *Wright* opinion to cases in which the appellant is charged with both first degree kidnapping and one of the associated offenses enumerated in the first degree kidnapping statute. We also stated in *Jefferson,* however, that where the accused is charged with second degree kidnapping and an associated offense, the second degree kidnapping charge would lie only if the movement of the victim is over and above that required to complete the associated crime charged. *Id.* Clearly, in both the *Jefferson* and *Wright* situations, a kidnapping conviction requires more than the mere fact of asportation; it requires movement which is more than incidental to the associated offense.

The decisions in both *Jefferson* and *Wright* were based on our concern with avoiding an uncontemplated double punishment of the accused. This type of uncontemplated double punishment only becomes a concern when the accused has been charged with kidnapping and an associated offense. Thus, where the kidnapping charge stands alone, "[i]t is the *fact,* not the *distance* of forcible removal of the victim that constitutes kidnapping." Jensen v. Sheriff, 89 Nev 123, 125–126, 508 P.2d 4, 5 (1973).

In applying these rules of law to the instruction given in the instant case, we note that a fundamental principle of our system of trial by jury is that an instruction must accurately state the law. *See* State of Nevada v. Squaires, 2 Nev. 226 (1866). Therefore, Langford, who was charged with both the first degree kidnapping and robbery of Cynthia Walters, was entitled to a jury instruction on the first degree kidnapping charge that encompassed the rule announced by this court in *Wright.* The trial court erred by not giving such an instruction. This error was compounded by not limiting the instruction that no minimal distance of asportation need be established to the second degree kidnapping charge.

In our view, the questions of whether the movement of the

victim was incidental to the associated offense and whether the movement increased the risk of harm to the victim are questions of fact to be determined by the jury in all but the clearest cases. *See* People v. Anthony, 86 Cal.Rptr. 767, 778 (Cal.App. 1970); People v. Chavez, 84 Cal.Rptr. 783, 787 (Cal.App. 1970). The failure to instruct the jury in these matters misled the jury and resulted in substantial prejudice to the accused because of which the conviction of first degree kidnapping must be reversed, and the appellant remanded for a new trial. *See* Harvey v. State, 78 Nev. 417, 375 P.2d 225 (1962).

As to the instructions on second degree kidnapping, however, we perceive no error. Langford was charged with the second degree kidnapping of Sanford Walters and Woody Hamric. There was no charge that an associated offense was committed against either Sanford Walters or Hamric. In such situation, there need be no finding with regard to minimal asportation of the accused to sustain the kidnapping charge. Though the instruction given regarding minimal asportation of the accused should have been limited to the second degree kidnapping charge, we do not feel this error resulted in prejudice to the accused.

5.   Other assigned errors have been considered and are without merit.

Accordingly, the convictions of robbery and second degree kidnapping are affirmed. Appellant's conviction of first degree kidnapping is reversed, and the case is remanded to the district court for a new trial on that charge.

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.