STATE OF CONNECTICUT *v.* RALPH FESTO

STATE OF CONNECTICUT *v.* CLIVE RUSSELL

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued March 5—decision released June 24, 1980

*Charles Hanken,* with whom, on the brief, was *Joseph Mirsky,* for the appellants (defendant in each case).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Walter D. Flanagan,* assistant state's attorney, for the appellee (state).

LOISELLE, J. Each of the defendants, officers in the Stamford police department, was charged with larceny in the first degree in violation of General Statutes §§ 53a-119 and 53a-122 (a) (2) and burglary in the third degree in violation of § 53a-103 (a). A jury found them guilty of first degree larceny but not guilty of third degree burglary. The court sentenced each defendant to three to six years in prison and both defendants appealed.

The defendants raise three issues on appeal: whether the court should have granted their motions for a mistrial or their motions to suppress for failure to disclose incriminating evidence prior to trial despite a court order directing the state to do so; whether their constitutional right to be confronted with the witnesses against them was violated by the state's failure to arrest an accomplice in the crime, thereby permitting him to leave the jurisdiction for parts unknown; and whether the court erred in denying the defendants' motions to set aside the verdicts for insufficient evidence. The remaining issues raised by the defendants in their preliminary statement of issues have

not been briefed and are considered abandoned. *State* v. *Hoffler,* 174 Conn. 452, 457, 389 A.2d 1257 (1978).

We review first the defendants' claim of insufficient evidence. From the evidence presented the jury could have found the following facts. On June 8, 1975, the Stamford police department received a telephone call from a neighbor of Frederick H. Gibbs to investigate a possible burglary at the Gibbs home in Stamford. The home was situated on a six acre lot which was fairly well wooded. The neighbor had checked Gibbs' home approximately two weeks before that day and the premises appeared secure, but on June 8 he noticed the front door open, tire tracks in the driveway and some furniture missing. When he returned home, he telephoned the police.

The police officer who responded to the call met the neighbor at the Gibbs residence. The officer found the interior of the home in complete disarray and found no furniture except for some mattresses and a couch. There were no indications of forced entry, but the officer noticed the tire tracks. The officer advised the neighbor to contact the police should anything further develop, then left the scene.

On June 16, 1975, that same neighbor heard a truck spinning its wheels in the Gibbs driveway as though it were stuck in the mud. Again he telephoned the police who met him in Gibbs' driveway. The truck, its hood still warm, was registered to William Caputo of Stamford. No one was in the truck at the time. Although a search of the surrounding area was fruitless, the following items were found in the truck: a ladies' handbag containing personal papers which belonged to Karen Festo,

Ralph Festo's wife, several articles of clothing including a pair of police trousers with Festo's name inside, a vial of vitamin pills, another ladies' handbag, this one empty, a container of breath mints and a nail file.

The following day, June 17, 1975, three police officers went to Festo's home in Norwalk. Festo said he knew nothing about the Gibbs incident and permitted the officers to search his home. The search revealed nothing. Festo's friend Caputo was there at the time. Festo also told the police that Caputo had told him the police would contact him about the presence of the truck and its contents on the Gibbs property. Festo explained that he and his wife had used Caputo's truck to move from Stamford to Norwalk and that they had left some personal belongings in the truck because they no longer wanted them.

On June 8, 1975, Russell and Caputo rented space at the Westchester Coliseum Antiques Show from an antiques dealer who later testified for the state at trial. She identified the bureau Russell brought to the show as the bureau depicted in a photograph introduced as an exhibit by the state.[1] Gibbs' neighbor also identified the bureau in the photograph as one he had observed in the Gibbs' home. Russell told the dealer that he had the rest of the bedroom set and other furniture available for sale. He set a price of $1,000 for the bureau.

---

[1] The bedroom set, a Louis XV reproduction more than eighty years old, is distinctive in appearance. Its appraised market value at the time of trial was between $20,000 and $30,000. The pieces are rather ornate with hand painted scenes of cherubs at play in fields and on clouds encircled by carvings in the wood.

On June 12, 1975, Caputo telephoned Ralph Sparan, the buyer for United Housewrecking Corporation in Stamford. United buys and sells used furniture. Caputo told Sparan he had something to sell. When Sparan telephoned Caputo the next day, Russell answered the telephone and made arrangements for Sparan to see a bedroom set. Russell told Sparan to meet him at Caputo's house. When Sparan arrived Russell showed him two beds, two dressers, a highboy, and a night table which did not belong to the set. Russell told Sparan that the furniture belonged to another person, that he was selling it for her and that he was asking $2000 to $2300 but the woman might take as little as $1900. The two men discussed the condition of the furniture. Sparan asked where the mirrors were, then left after saying he would discuss the purchase with his boss. Sparan called Russell later that day to arrange a time for his employer to see the furniture. His employer, a part owner of United, viewed the furniture that same day. Russell told him that the furniture had been in storage and belonged to his grandmother. United's owner offered $1500 and Russell agreed.

Sparan returned with another employee that afternoon to pick up the bedroom set. When he arrived both Festo and Russell were present and made no effort to conceal the fact that they were police officers. Russell signed a receipt for the furniture and Sparan issued Russell a check for $1500. The check was presented to a bank for payment by Ralph Festo between 3 and 5 o'clock that afternoon. A police detective located the furniture with the receipt bearing Russell's name on it on June 28, 1975. Gibbs' personal secretary later identified the furniture at United as items belonging to Gibbs.

On June 28, 1975, Caputo, accompanied by his attorney, made a statement to the Stamford police, and Festo and Russell offered their written resignations, badges, guns, keys and other equipment. Caputo returned several items which had been stolen from Gibbs' home. Festo and Russell told a superior officer, a police lieutenant, that they thought the house was abandoned, that this was the only incident in which they had been involved, that it was an embarrassing situation and that they hoped other members of the department would not suffer because of it. When the lieutenant asked them where Gibbs' metric tools were, Russell answered, "Don't press me on it. I can't get them." On July 1, 1975, the lieutenant telephoned Festo to ask where Gibbs' air compressor was. Caputo returned it that evening, along with an Allard tire and a desk also stolen from Gibbs' home. Festo and Russell were arrested on July 19, 1975.

" 'When a jury verdict is challenged on the ground that the evidence is insufficient to sustain the verdict, the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. . . .' Each essential element of the crime charged must be established by such proof . . . and although it is within the province of the jury to draw reasonable, logical inferences from the facts proven, they may not resort to speculation and conjecture." (Citations omitted.) *State* v. *Saracino*, 178 Conn. 416, 419, 423 A.2d 102 (1979).

The defendants contend that in view of the evidence introduced on their behalf, the jury could not

reasonably have concluded that the evidence was sufficient to support a verdict of guilty beyond a reasonable doubt of first degree larceny. The defendants' evidence may be fairly summarized as follows. Caputo led Festo and Russell to believe that he owned the furniture, and that they could help him sell it at a fair price. Since Festo and Russell worked the evening shift and Caputo needed someone to show the furniture during the day, Russell agreed to meet the prospective buyer from United Housewrecking. According to Festo, when he gave Caputo the $1500, Caputo offered him $100 to share with Russell but Festo refused because Caputo had recently loaned Festo his truck to help him move from Stamford to Norwalk. Both defendants testified that their resignations were submitted under duress and before they discovered that Caputo had incriminated them. According to the defendants, when Caputo tried to retract his statement of the Gibbs incident, the police lieutenant threatened him with arrest and prosecution. The defendants also denied and contradicted several material facts established by the state's witnesses on direct.

On the evidence presented and the reasonable inferences drawn therefrom, as presented above, the cumulative effect of the evidence was sufficient to justify the jury's verdicts of guilty on the first degree larceny charges. *State* v. *Saracino,* supra. Although the jury acquitted the defendants on charges of third degree burglary, this does not render their verdicts on charges of first degree larceny unreasonable or illogical. There was ample evidence, both direct and circumstantial, to convince the jury beyond a reasonable doubt; *State* v. *Dubina,* 164 Conn. 95, 98, 318 A.2d 95 (1972); and

it was within the province of the jury to disbelieve the defendants' version of the facts. *State* v. *Ballas,* 180 Conn. 662, 674–75, 433 A.2d 989 (1980). The trial court did not err in denying the defendants' motions to set aside the verdicts for insufficient evidence.

The defendants claim that the state's failure to disclose the existence of items taken by the police from Russell's locker at police headquarters until after the trial began should have resulted in a mistrial, or at minimum, suppression of the evidence. The defendants argue that the state's introduction of the evidence, the defendants' motion to suppress and the court's decision to excuse the jury for more than one week while the motion was heard prejudiced the jury against them and rendered a fair trial impossible.

The parties agree to the facts and circumstances surrounding the state's introduction of the diary, stenographic pad and clipboard taken from Russell's locker. When Russell tendered his resignation as a police officer on June 28, 1975, he surrendered the key to his locker at police headquarters. Two days later the police lieutenant who had accepted his resignation used the key to open Russell's locker. He placed the contents in a cardboard box and delivered the box to the police captain. The contents of the locker remained under lock and key until May 5, 1976.

On August 8, 1975, the court granted the defendants' motions for production and discovery in which the defendants requested, among other things, "Any documents or tangible objects obtained from or belonging to the defendant or obtained from others by seizure or process." The state's reply listed other items in the state's possession, but omitted the diary,

stenographic pad and clipboard then in physical possession of the police, because the state's attorney was unaware of these items at the time.

On May 5, 1976, the police lieutenant directed a detective to obtain a handwriting sample from the documents found in Russell's locker.[2] It was apparently then that several incriminating entries in the documents were discovered, including entries for May 14 and May 30, 1975, which noted Gibbs' name, address and license plate number and an entry for June 8, 1975, which indicated an auction in White Plains, New York. The trial began on May 26, 1976. When the state offered these items as exhibits through the detective's testimony defense counsel objected. Defense counsel's stated grounds for the objection were that the state's failure to comply with court ordered discovery and introduction of exhibits which he was not aware of had "taken [the defendants] by surprise" and deprived him and his clients time to review the evidence.[3]

The defendants moved the court to declare a mistrial and to suppress the diary, stenographic pad and clipboard taken from Russell's locker. At no time did the defendants move for a continuance to

---

[2] The defendants contend that obtaining a handwriting sample was a pretext to gain access to Russell's belongings, because no expert was ever employed to study Russell's handwriting. The state claims the police wanted to examine Russell's handwriting in connection with another matter. Even if the defendant's contention were true, the defendants have never contested the propriety of the state's seizure of these items through the Stamford police, presumably because Russell surrendered possession of the locker and its contents to the police department when he returned his key and never made any claim to the property since then.

[3] Defense counsel originally objected on fourth amendment grounds, but later confined the basis of his objection to noncompliance with court ordered discovery, which is the sole basis of the defendants' claim on appeal.

enable counsel to review and analyze the documents, despite the fact that defense counsel's stated reason for his objection was that "[i]rreparable harm has been done to give me this information at this time." The state's brief indicates that the court afforded the defendants an opportunity for reflection and examination of the evidence, but the defendants did not avail themselves of this opportunity. The court denied both the motions for mistrial and the motions to suppress.

In the absence of a statute or court rule to the contrary, a person accused of a crime is not, as a matter of right, entitled to inspection or disclosure of evidence in the possession of the prosecution. *Weatherford* v. *Bursey,* 429 U.S. 545, 559, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977); *Wardius* v. *Oregon,* 412 U.S. 470, 474, 93 S. Ct. 2208, 37 L. Ed. 2d 82 (1973); 2 Wharton, Criminal Procedure (12th Ed. 1975) § 381; annot., 7 A.L.R.3d 8, 22–29.[4] At the time this case was tried, the trial court, pursuant to Practice Book, 1963, § 533B (2) (now Practice Book, 1978, § 741 [2]),[5] ordered the state to disclose documents and other tangible items obtained from

---

[4] Although "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"; *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *State* v. *Grayton,* 163 Conn. 104, 108, 302 A.2d 246 (1972), cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495 (1972); the defendants do not claim that the items seized from Russell's locker at the police department were in any way exculpatory. The parties appear to be in agreement that this evidence could only have been harmful to the defendants.

[5] Practice Book, 1963, §§ 533A through 533S contained rules for discovery in criminal cases which were adopted June 26, 1972, to take effect October 1, 1972. Section 533B, a subsection of § 533A, provides in pertinent part: "MATERIALS DISCOVERABLE BY DEFENDANT AS OF RIGHT. Upon motion made by a defendant, the court shall

or belonging to the defendant. Under Practice Book, 1963, § 533L[6] (now Practice Book, 1978, § 734) the state had a continuing duty to disclose promptly the existence of the items found in Russell's locker and was subject to sanctions for its failure to do so. Section 533L, however, also vests broad discretion in the trial court in determining the appropriate sanction for failure to comply with a discovery order issued pursuant to § 533B.[7] Here, the trial court, in the exercise of its discretion, determined that the appropriate relief in this case was to grant the defendants additional time. The defendants contend that a more severe sanction, mistrial or at minimum suppression of the evidence, should have been imposed.

order the state's attorney or the prosecuting attorney to permit the defendant to inspect and copy or photograph any relevant . . . (2) designated books, tangible objects, papers or documents obtained from or belonging to defendant . . . ."

[6] Practice Book, 1963, § 533L provided: "CONTINUING DUTY TO DISCLOSE; FAILURE TO COMPLY. If subsequent to compliance with an order issued pursuant to Sec. 533A and prior to or during trial, a party discovers additional material previously requested or ordered subject to discovery or inspection, he shall promptly notify the other party or his attorney or the court of the existence thereof. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with Sec. 533A or with an order issued pursuant to Sec. 533A, it may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems appropriate."

[7] Other jurisdictions with the same or substantially similar rules of practice have also given the trial courts broad discretion in fashioning remedies for failure to comply with court ordered discovery. *Williams* v. *State*, 600 P.2d 741, 742 (Alaska 1979); *State* v. *Lawrence*, 123 Ariz. 301, 303, 599 P.2d 754 (1979); *Rowley* v. *State*, 394 N.E.2d 928, 930 (Ind. 1979); *State* v. *Cook*, 225 Kan. 259, 261, 589 P.2d 616 (1979); *State* v. *Lindsey*, 284 N.W.2d 368, 373 (Minn. 1979); *Langford* v. *State*, 95 Nev. 631, 635, 600 P.2d 231, 234 (1979); *State* v. *Locklear*, 42 N.C. App. 486, 489, 254 S.E.2d 653 (1979).

" 'The general principle is that a mistrial should be granted only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial. *Izzo* v. *Crowley,* 157 Conn. 561, 565, 254 A.2d 904; *Ferino* v. *Palmer,* 133 Conn. 463, 466, 52 A.2d 433.' *State* v. *Grayton,* 163 Conn. 104, 112, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495. Although it is true that 'a state's attorney should scrupulously avoid questions of probable impropriety, we recognize that the trial judge is the arbiter of the many circumstances which may arise during a trial; *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689; [and that] [t]he trial court has a wide discretion in passing on motions for mistrial. *State* v. *Savage,* 161 Conn. 445, 449, 290 A.2d 221.' *State* v. *Brown,* 169 Conn. 692, 703, 364 A.2d 186." *State* v. *Piskorski,* 177 Conn. 677, 719-20, 419 A.2d 866 (1979). Suppression of relevant, material and otherwise admissible evidence is a severe sanction which should not be invoked lightly. *State* v. *Lindsey,* 284 N.W.2d 368, 373 (Minn. 1979).

The purpose of criminal discovery is to prevent surprise and to afford the parties a reasonable opportunity to prepare for trial. To achieve these goals and to assure compliance with the rules, the trial court must impose an appropriate sanction for failure to comply. In determining what sanction is appropriate, the trial court should consider the reason why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances. See *State* v. *Lindsey,* supra, 373; *State* v. *Hunt,* 118 Ariz. 431, 434, 577 P.2d 720 (1978); 1 Wright,

Federal Practice and Procedure, Criminal § 260. Other jurisdictions require a showing of prejudice. *United States* v. *Bridwell,* 583 F.2d 1135, 1141 (10th Cir. 1978); *State* v. *Lawrence,* 123 Ariz. 301, 303, 599 P.2d 754 (1979); *State* v. *King,* 372 So. 2d 1126, 1128–29 (Fla. 1979); *State* v. *Cook,* 225 Kan. 259, 261–62, 589 P.2d 616 (1979); *State* v. *Smith,* 400 A.2d 749, 757 (Me. 1979); *Langford* v. *State,* 95 Nev. 631, 635, 600 P.2d 231 (1979); *State* v. *Trail,* 255 S.E.2d 900, 904 (W. Va. 1979). The defendants do not claim that the prosecutor's failure to disclose was the result of bad faith. Their failure to request a continuance or to accept the trial court's offer of additional time to investigate and discuss the ramifications of the state's introduction of items found in Russell's locker indicates a willingness to proceed with the trial. The record does not show that the defendants were denied the opportunity to cross-examine witnesses with regard to the exhibits in question. Nor have the defendants shown any resulting prejudice. The trial court did not abuse its discretion by affording the defendants more time to examine and analyze the evidence in lieu of granting their motions for a mistrial and motions for suppression of evidence.

The defendants claim that the state's failure to produce Caputo to testify at trial deprived them of their right to be confronted with the witness against them. Specifically, the defendants contend that the state's failure to issue a bench warrant for Caputo permitted him to flee the jurisdiction without fear of being compelled to return to Connecticut to testify. Caputo left the state after the defendants were arrested but before trial. Efforts by the state through the Stamford police to locate him through

acquaintances, his attorney, his family, the F.B.I. and the Columbus, Ohio police department were futile.[8]

A Stamford police lieutenant testified that to obtain the return of Gibbs' property, Caputo was not arrested. The state concedes that Caputo's statement precipitated the arrest of the defendants.

The right to confront and to cross-examine one's accusers, guaranteed in a state trial through the sixth and fourteenth amendments to the United States constitution; *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); see *State* v. *Bugbee,* 161 Conn. 531, 534, 290 A.2d 332 (1971); does not require the state to produce an informer to testify against the defendant at trial; *Cooper* v. *California,* 386 U.S. 58, 62 n.2, 87 S. Ct. 788, 17 L. Ed. 2d 730, reh. and modif. denied, 386 U.S. 988, 87 S. Ct. 1283, 18 L. Ed. 2d 243 (1967); 2 Wharton, Criminal Evidence (13th Ed. 1972) § 421; and certainly does not require the state to secure a bench warrant for an accomplice's arrest to assure his availability at the time of trial. Other than the fact that Caputo was not arrested, the defendants do not rely on any additional facts to support their claim that the state caused Caputo's absence during trial. Furthermore, the defendants have not shown that Caputo's testimony would have exonerated them. Indeed, if his testimony were consistent with his prior statements, both oral and written, to the Stamford police, his appearance as a witness at trial would have been very incriminating to both Festo and Russell. Where the state does not rely on the statements of an accomplice

---

[8] Defense counsel did not request a continuance to locate Caputo to testify as a witness for the defense at trial. 3 Wharton, Criminal Procedure (12th Ed. 1975) § 427.

268

in its case against the defendant, the defendant's right to confront his accuser is not violated by the failure of the state to produce the accomplice at trial. Since there is nothing in the record to indicate that the state introduced into evidence statements made by Caputo before trial, the defendant's sixth amendment right to confrontation was not violated. Cf. *Motes* v. *United States,* 178 U.S. 458, 20 S. Ct. 993, 44 L. Ed. 1150 (1900). "The defendant's right to confront witnesses against him is not absolute, but must bow to 'other legitimate interests in the criminal trial process.'" *State* v. *Mastropetre,* 175 Conn. 512, 521, 400 A.2d 276 (1978), citing *Chambers* v. *Mississippi,* 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). A criminal defendant does not have a sixth amendment right to compel the arrest and subsequent testimony of one whose prior statements played some role in the events which led to his prosecution. There is nothing in the record to indicate that Caputo's absence as a witness deprived the defendants of a fair trial.

There is no error in either case.

In this opinion the other judges concurred.