JOSEPH CLEM AKA CLEM JOSEPH; GERALD BRIDGE-
WATER; KENNETH BRIDGEWATER; JAMES
PLAYER; AND CHARLES COOK, APPELLANTS, v. THE
STATE OF NEVADA, RESPONDENT.

No. 17799

August 25, 1988                                    760 P.2d 103

*Morgan D. Harris*, Public Defender, *Victor John Austin*, Dep-
uty Public Defender, Clark County, for Appellant Joseph Clem.

*Mark B. Bailus*, Las Vegas, for Appellant Gerald Bridgewater.

*Lynn Shoen*, Las Vegas, for Appellant Kenneth Bridgewater.

*Ward & Maglaras*, Las Vegas, for Appellant James Player.

*Beury & Schubel*, Las Vegas, for Appellant Charles Cook.

*Beckley, Singleton, DeLanoy, Jemison & List* and *Daniel F.
Polsenberg*, Las Vegas, for Appellants.

*Brian McKay*, Attorney General, Carson City; *Rex Bell*, Dis-
trict Attorney, Clark County; for Respondent.

# OPINION

*Per Curiam:*

Appellants Joseph Clem, Gerald Bridgewater, Kenneth Bridgewater, James Player and Charles Cook were convicted of first degree kidnapping, extortion and mayhem for burning Katherine Sexton with a red-hot table fork and heated electric iron. Appellants raise a number of challenges to their convictions. We conclude that the convictions were properly entered and therefore affirm.

Katherine Sexton lived in Las Vegas with her five-year-old daughter, Erica, and her cousin, appellant Joseph Clem. Clem's friends from Los Angeles, appellants Gerald and Kenneth Bridgewater, Player and Cook, had been staying at Sexton's apartment and using it to cook cocaine into rock form, or crack. Appellants had also been selling cocaine from the apartment.

Sexton did not like the influence of the drugs on Erica so she threw a baggie containing $1,500 of appellants' cocaine out the window. Two days later, at 4:00 a.m. on January 30, 1986, the Bridgewaters, Player and Cook entered Sexton's apartment and demanded to know what had happened to their cocaine. Clem joined the men, while Gerald Bridgewater closed the door to the bedroom where Erica slept. Appellants heated a table fork on the apartment's electric stove and placed it on Sexton's hand, arm, forehead and stomach. They held a shirt over Sexton's mouth to muffle her screams.

The men repeatedly demanded $1,500. They made Sexton call several people, including her friend, Sonja Smith, to obtain the money. Because Sexton was crying, Smith asked if she needed the police. When Sexton said yes, Smith called the police.

Thereafter, Clem heated an electric iron while the others held Sexton on the sofa. Clem pressed it against her thigh for three or four seconds, until Sexton could hear her skin sizzle. Clem then stated he would next burn her face.

The police arrived moments later. Three officers testified that they noticed a haze in the living room and smelled burnt flesh. The officers found a fork wedged into the electric coils on the stove and a hot iron. Sexton had second degree burns on her thighs, forehead and buttocks, some of which showed the shape of the fork's tines, and a four by twenty inch burn on her thigh from the iron.

At trial, appellants were found guilty of first degree kidnapping, extortion and mayhem, all with a deadly weapon. Each was sentenced to life with the possibility of parole for kidnapping, ten years for extortion, and five years for mayhem; and each was

given additional identical consecutive sentences for committing each offense with a deadly weapon. Appellants appeal their convictions, raising a number of issues, all of which we have determined are without merit.

## THE KIDNAPPING CHARGES

Appellants contend that because the kidnapping was incidental to the extortion and mayhem, the State must prove Sexton was moved to establish kidnapping as a separate offense.[1] Appellants insist that there was no evidence of asportation because Sexton was seated on her sofa while being threatened and burned. While the plain language of NRS 200.310(1) does not require asportation, the court has required it when the kidnapping is incidental to another offense, such as robbery, where restraint of the victim is inherent with the primary offense. *See* Wright v. State, 94 Nev. 415, 581 P.2d 442 (1978); Langford v. State, 95 Nev. 631, 600 P.2d 231 (1979). Here, however, appellants physically restrained Sexton. This, in itself, establishes kidnapping as an additional offense. Moreover, the kidnapping was not incidental to the extortion because the restraint increased the risk of harm. Finally, the restraint had an independent purpose and significance as it was essential to the accomplishment of mayhem.

Appellants also insist that the district court erred in instructing the jury on kidnapping. Their proffered instruction was not offered to the district court. The failure to offer the instruction waives the issue on appeal. *See* McShane v. State, 94 Nev. 669, 584 P.2d 707 (1978). In addition, our review of the instructions shows they included the statutory elements of kidnapping. There was no error.

## PROSECUTORIAL DISCRIMINATION

Appellants contend that their Fourteenth Amendment equal protection rights were violated by the prosecutor's removal of all black veniremen from the jury. Appellants, citing Batson v. Kentucky, 476 U.S. 79 (1986), claim that the prosecutor improperly used his peremptory challenges to remove all three black veniremen, leaving an all-white jury to judge the five black defendants. Appellants argue that the facially neutral reasons

---

[1]NRS 200.310(1) provides, in pertinent part:

Every person who shall willfully seize, confine, . . . conceal, kidnap or carry away any person by any means whatsoever with the intent to hold or detain, or who holds or detains, the person . . . for the purpose of committing sexual assault, extortion or robbery upon or from the person . . . is guilty of kidnapping in the first degree.

supplied by the prosecutor as justification for his action were designed to hide racial bias and that the district court abused its discretion by not entering findings on the issue.

The State removed three prospective black jurors with peremptory challenges and used its other five challenges to remove whites. After appellants objected to the prosecutor's use of the challenges, the prosecutor stated he removed one black juror because he did not want young, single jurors and had done the same with a similar white juror. The prosecutor stated that he had challenged the other two blacks because each had a son or stepson convicted of crimes and felt, as a result, they might be prejudiced against the legal system. The district court held a recess, during which time the judge reviewed the *Batson* opinion. Thereafter, the court ruled that the prosecutor removed the black veniremen for facially neutral reasons, and denied appellants' motion for a mistrial.

We conclude that the prosecutor's reasons are facially neutral and do not evidence a racial bias. The prosecutor peremptorily challenged one black venireman because he was young, single and hesitated in answering certain questions.[2] This is a viable reason, especially in the prosecution of other young, single men for drug-related crimes.[3] Although the prosecutor did not explain why young, single males were not desirable jurors, he did remove both veniremen of that class. The record supports the district court's finding of no purposeful discrimination.

The prosecutor challenged two black veniremen because each had a close relative convicted of a crime. Association with the criminal justice system is a facially neutral reason to challenge veniremen.[4] The prosecutor also removed one white venireman whose brother had been convicted of robbery. The prosecutor removed all persons who had relatives convicted of crimes, and his reasons for doing so were facially neutral and reflective of no purposeful discrimination violative of the Fourteenth Amendment.

---

[2]Removal for hesitation is not a specific basis related to the case, though it is facially neutral. As the prosecutor provided other facially neutral reasons for challenging this juror, and we can discern no hidden racial bias, we cannot find evidence of purposeful discrimination. *See* United States v. Forbes, 816 F.2d 1006 (5th Cir. 1987); United States v. Vaccaro, 816 F.2d 443 (9th Cir. 1987), *cert. denied,* 108 S.Ct. 262 (1988).

[3]*See* Haynes v. State, 103 Nev. 309, 739 P.2d 497 (1987); United States v. Clemons, 843 F.2d 741 (3rd Cir. 1988); State v. Castillo, 751 P.2d 983 (Ariz.App. 1987).

[4]*See Forbes,* 816 F.2d at 1010-11; United States v. Williams, 822 F.2d 512 (5th Cir. 1987); *Vaccaro,* 816 F.2d at 457.

In addition, the district court entered sufficient findings on the issue. The trial courts must make a sincere and reasoned attempt to evaluate the prosecutor's explanation, and reject race-neutral explanations that are not bona fide and unrelated to the facts of each specific case. *See* Ward v. State 733 S.W.2d 728 (Ark. 1987); Slappy v. State, 503 So.2d 350 (Fla.App. 1987), *aff'd,* 522 So.2d 18 (Fla. 1988), *cert. denied,* 108 S.Ct. 2873. The district court recessed to consider the matter in the light of a contemporaneous review of *Batson.* Although a more thorough explanation of the court's decision could have been placed in the record, the record indicates the district court carefully considered the matter. The district court's decision is discretionary. *See Batson,* 476 U.S. at 98 n.21 ("a reviewing court ordinarily should give these findings great deference."). The district court has not abused its discretion.

### APPELLANTS' REMAINING CLAIMS

Appellants contend that the district court should have stricken comments made by one of Sexton's neighbors purporting to interpret Sexton's hysterical statements soon after she was attacked. Sexton's statements are excited utterances. *See* NRS 51.095. The neighbor's statements are independently admissible as there is no evidence that the woman would not be speaking the truth in a moment of crisis. *See* NRS 51.075. Further, Sexton later corroborated the statements in her testimony, which supports the declarant's credibility. *See* Lopez v. State, 631 P.2d 420 (Wash.App. 1981).

Appellants also argue that the district court erred by admitting, over objection, photographs of Sexton's injuries. We have reviewed the photographs and although they graphically depict Sexton's burns, they are not gruesome or unduly prejudicial. *See* Milligan v. State, 101 Nev. 627, 708 P.2d 289 (1985), *cert. denied,* 107 S.Ct. 238 (1986); Dearman v. State, 93 Nev. 364, 566 P.2d 407 (1977).

Appellants next contend that the enhancements for using a deadly weapon were improperly entered because "simple household items" cannot be deadly weapons without proof that they are capable of inflicting death.[5] This court has not previously defined

---

[5]NRS 193.165 provides:

1. Any person who uses a firearm or other deadly weapon . . . in the commission of a crime shall be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for each crime.

what instruments are properly included in the category of "deadly weapons." Other states have generally resolved the definitional problem by resorting to a functional test of how an instrument is used and the facts and circumstances of its use.[6] We hereby adopt the same test for determining whether an instrument is within the category of a "deadly weapon." A heated electric iron and red hot table fork can cause serious bodily injury or death. Sexton's burns evidence that injury. The appellants' intent to injure and disfigure with the iron and the fork was clearly illustrated at trial. Appellants' sentences were properly enhanced as these instruments were used as deadly weapons.

Appellants also contend that the district court erred by denying their petitions for writs of habeas corpus, which sought dismissal of either the robbery or the extortion charge. Robbery and extortion are different crimes, one the taking of personal property by direct means and the other the taking of personal property by indirect means. *See* Eckert v. Sheriff, 92 Nev. 719, 557 P.2d 1150 (1976). The facts clearly show the basis for two offenses: extortion by forcing Sexton to call her friends to obtain money, and robbery by taking Sexton's food stamps and money from her pocket. The district court did not err in denying appellants' petitions for writs of habeas corpus.

Appellants contend the district court erred by denying their motion for a new trial based on newly-discovered evidence. The district court found that the new evidence would probably not lead to a different result on retrial. We agree with the district court decision. The evidence contradicts a witness' prior testimony, which is not, in the instant case, grounds for a new trial. *See* Oliver v. State, 85 Nev. 418, 456 P.2d 431 (1969). Further, the new "sixth man," who was purportedly at the scene of the crime, cannot now be found. In any event, the district court did not abuse its discretion in denying the new trial motion. *See* Young v. State, 103 Nev. 233, 737 P.2d 512 (1987); Lightford v. State, 91 Nev. 482, 538 P.2d 585 (1975).

Appellants next urge reversal based upon the claims that a variety of the prosecutor's statements and actions denied them a fair trial. We have reviewed the four contentions and they are

---

[6]*See* State v. Bustamone, 593 P.2d 912 (Ariz.App. 1978); People v. Moran, 109 Cal.Rptr. 287 (Cal.Dist.Ct.App. 1973); People v. Grubb, 408 P.2d 100 (Cal. 1965); People v. Cordero, 206 P.2d 665 (Cal.Dist.Ct.App. 1949); Wynn v. United States, 538 A.2d 1139 (D.C.App. 1988); People v. Van, 483 N.E.2d 666 (Ill.App. 1985); People v. Spagnola, 260 N.E.2d 20 (Ill.App. 1970), *cert. denied,* 402 U.S. 911 (1971); People v. Dwyer, 155 N.E. 316 (Ill. 1927); Cummings v. State, 384 N.E.2d 605 (Ind.App. 1979).

without merit. None of the statements rise to the level of prejudicial error in light of the overwhelming evidence of appellants' guilt. *See* Flanagan v. State, 104 Nev. 105, 754 P.2d 836 (1988).

There is also no merit in the contention that the prosecutor failed to present exculpatory evidence to the grand jury. NRS 172.145(2) requires the district attorney to submit any evidence which will explain away the charge. *See* Sheriff v. Frank, 103 Nev. 160, 734 P.2d 1241 (1987). Sexton testified to the disputed facts and the grand jury questioned Sexton on the point. The prosecutor did not divert the grand jury from the evidence. The district court appropriately found that the grand jury received a fair presentation of the facts and denied appellants' writs of habeas corpus.

Finally, appellants contend that the indictment failed to charge appellants as aiders and abettors. The indictment names appellants as aiders and abettors in several ways. The jury instructions reiterate the indictment's recitations. Appellants had notice of the State's intentions to charge them as aiders and abettors and received a fair trial.

For the foregoing reasons we affirm appellants' convictions and sentences.