JOSEPH CLEM, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 40008

KENNETH BRIDGEWATER, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 40009

GERALD BRIDGEWATER AND JAMES PLAYER, APPELLANTS, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 40028

June 7, 2004                                                                 91 P.3d 35

*JoNell Thomas,* Las Vegas, for Appellant Joseph Clem.

*Christopher R. Oram,* Las Vegas, for Appellant Kenneth Bridgewater.

*J. Chip Siegel, Chtd.,* and *Jay L. Siegel,* Las Vegas, for Appellants Gerald Bridgewater and James Player.

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION ON REHEARING

*Per Curiam:*

Appellants have petitioned for rehearing of *Clem v. State (Clem II)*,[2] our decision affirming the district court's denials of appel-

---

[2] 119 Nev. 615, 81 P.3d 521; *see also Clem v. State,* 104 Nev. 351, 760 P.2d 103 (1988) (*Clem I*), *overruled in part by Zgombic v. State,* 106 Nev. 571, 798 P.2d 548 (1990).

lants' successive and untimely post-conviction petitions for writs of habeas corpus. They challenge *Clem II*'s conclusion that their claims of retroactive entitlement to the ''deadly weapon'' test of *Zgombic v. State*[3] are barred by the law of the case and by the procedural bars of NRS Chapter 34. They assert, *inter alia,* that this conclusion is inconsistent with and overlooked our decision in *Leslie v. Warden (Leslie II),*[4] wherein we reconsidered in habeas review our previous interpretation of the statutory death penalty aggravator ''at random and without apparent motive''[5] and applied the corrected interpretation to Leslie's case, despite our earlier decision upholding the aggravator in Leslie's direct appeal. We conclude that appellants' cases present factual and legal circumstances distinguishable from those in *Leslie II* and therefore neither *Leslie II* nor its progeny is controlling authority here. Accordingly, we deny rehearing.[6]

## DISCUSSION

The procedural history of appellants' cases is fully set forth in *Clem II*.[7] Briefly, in our 1988 decision in appellants' direct appeals, *Clem v. State (Clem I),*[8] we upheld appellants' convictions for use of a ''deadly weapon'' as that term was set forth in NRS 193.165. Later, in *Zgombic,*[9] we overruled *Clem I*'s test for a ''deadly weapon'' in favor of a narrower test that required that the weapon used be inherently dangerous. In 1993, we decided *Bridgewater v. Warden,*[10] affirming the denial of post-conviction relief to appellants and rejecting their claims that *Zgombic*'s ''deadly weapon'' test applied retroactively to their cases. Some or all of these appellants continued unsuccessfully to challenge their deadly weapon enhancements in state and federal courts.[11] In 2001, appellants again sought relief in state court on the same grounds, and in *Clem II,* our opinion which is the subject of the instant rehearing petition, we affirmed the district court's denial of relief on appellants' successive and delayed claims, concluding that appellants

[3]106 Nev. 571, 798 P.2d 548.

[4]118 Nev. 773, 59 P.3d 440 (2002); *see also Leslie v. State,* 114 Nev. 8, 952 P.2d 966 (1998) (*Leslie I*).

[5]*See* NRS 200.033(9).

[6]*See* NRAP 40(c).

[7]119 Nev. at 618-20, 81 P.3d at 523-25.

[8]104 Nev. at 356-57, 760 P.2d at 106-07.

[9]106 Nev. 571, 798 P.2d 548.

[10]109 Nev. 1159, 865 P.2d 1166 (1993).

[11]*See Clem II,* 119 Nev. at 619 & n.18, 81 P.3d at 524-25 & n.18.

could not defeat the law of the case and the procedural bars of NRS Chapter 34.[12]

Appellants first claim in their petition for rehearing that in deciding *Clem II,* we misapprehended the constitutional due process requirements recognized in various United States Supreme Court decisions including *Fiore v. White,*[13] *Bunkley v. Florida,*[14] and *Bousley v. United States.*[15] However, we conclude that appellants have failed to show that we overlooked or misapprehended a material fact in the record or a material question of law in the case related to federal due process rights.[16] Appellants have likewise failed to demonstrate that we overlooked, misapplied, or failed to consider controlling authority on a dispositive due process issue.[17] Our opinion fully sets forth our consideration of appellants' due process related contentions as necessary to determine proper application of the procedural bars to appellants' claims,[18] and we reject appellants' attempt to reargue the issue on rehearing.[19]

Appellants also contend that we reached our decision in *Clem II* by overlooking the controlling decision of *Leslie II*[20] and that our refusal to apply *Zgombic's* "deadly weapon" test to their cases is inconsistent with *Leslie II* and its progeny, *State v. Bennett (Bennett III).*[21] We disagree and expressly state so here for the purpose of deterring future arguments along this meritless vein.

The facts underlying our decision in *Leslie II* are as follows. A jury convicted Leslie of crimes including first-degree murder and imposed a death sentence for the murder after finding four aggravating circumstances, including that "the murder was committed upon one or more persons at random and without apparent mo-

---

[12]*Id.* at 620-30, 81 P.3d at 525-32.

[13]531 U.S. 225 (2001).

[14]538 U.S. 835 (2003).

[15]523 U.S. 614 (1998).

[16]*See* NRAP 40(c)(2)(i) (stating that rehearing may be considered "[w]hen the court has overlooked or misapprehended a material fact in the record or a material question of law in the case").

[17]*See* NRAP 40(c)(2)(ii) (stating that rehearing may be considered "[w]hen the court has overlooked, misapplied or failed to consider a statute, procedural rule, regulation or decision directly controlling a dispositive issue in the case").

[18]*Clem II,* 119 Nev. at 620-30, 81 P.3d at 525-32.

[19]*See* NRAP 40(c)(1) ("Matters presented in the briefs . . . may not be reargued in the petition for rehearing . . . .").

[20]118 Nev. 773, 59 P.3d 440.

[21]119 Nev. 589, 81 P.3d 1 (2003); *see also Bennett v. State,* 106 Nev. 135, 787 P.2d 797 (1990) (*Bennett I*), *overruled in part by Leslie II,* 118 Nev. 773, 59 P.3d 440; *Bennett v. State,* 111 Nev. 1099, 901 P.2d 676 (1995) (*Bennett II*).

tive'' as set forth in NRS 200.033(9).[22] In Leslie's direct appeal, we concluded that sufficient evidence supported only three of the aggravators, including the NRS 200.033(9) aggravator.[23] As to this aggravator, we stated:

> [A] murder can be random and without apparent motive if the killing of a person was not necessary to complete a robbery. Evidence indicated that Leslie had received the money and could have left the store unfettered, but killed Prewitt anyway. Therefore, we conclude that evidence supported the jury's finding that the murder was random and without apparent motive pursuant to NRS 200.033(9).[24]

However, because we struck the fourth aggravator, we reweighed the evidence supporting a death sentence before upholding that sentence.[25]

Our decision in *Leslie II*[26] addressed the district court's denial of relief on Leslie's timely post-conviction petition for a writ of habeas corpus. Leslie argued in his petition and on appeal that his direct appeal counsel was ineffective for failing to challenge the sufficiency of the evidence to support the NRS 200.033(9) aggravator.[27] We concluded that counsel had not been ineffective with respect to this aggravator, but we nonetheless determined that we had previously erred in extending the reach of this aggravator to allow it to be found on evidence showing only that ''the defendant unnecessarily killed someone in connection with a robbery.''[28] We recognized that the procedural bar for waiver would normally apply; however, we also concluded that Leslie was actually innocent of the aggravator, a reasonable probability existed that absent the aggravator the jury would not have imposed death, and Leslie had therefore demonstrated a fundamental miscarriage of justice sufficient to overcome procedural bars.[29]

In revisiting the reach of the NRS 200.033(9) aggravator in *Leslie II,* we recognized that this court first interpreted the aggravator to include unnecessary killings in the course of a robbery in *Bennett v. State (Bennett I)*.[30] Our *Leslie II* decision then acknowl-

[22]*Leslie I,* 114 Nev. at 15, 952 P.2d at 971.

[23]*Id.* at 20-22, 952 P.2d at 975-76.

[24]*Id.* at 22, 952 P.2d at 976 (citation omitted).

[25]*Id.* at 22-23, 952 P.2d at 976.

[26]118 Nev. 773, 59 P.3d 440.

[27]*Id.* at 779, 59 P.3d at 444.

[28]*Id.* at 779-80, 59 P.3d at 444-45.

[29]*Id.* at 780, 59 P.3d at 445.

[30]*Id.*

edged that *Bennett I* "overstated the applicability of NRS 200.033(9) to robbery-related killings."[31] This determination was based on three grounds which we had ignored in deciding *Bennett I* and which showed that *Bennett I* had gone too far in interpreting the reach of the aggravator.[32] First, we turned to the plain meaning of the words chosen by the Legislature. We stated:

> "Random" means lacking a specific pattern, purpose or objective. Something is "apparent" when it is easily understood or obvious. And "motive" is defined as an emotion that leads one to act. With these definitions in mind, it appears that the Legislature intended this aggravator to apply to situations where a killer selects his victim without a specific purpose or objective and his reasons for killing are not obvious or easily understood.[33]

Second, we examined the legislative history of the statutory aggravator, stating:

> This aggravator was initially included in the list that was to become NRS 200.033 but at some point was deleted. Later, during a meeting of the Senate Judiciary Committee, a prosecutor queried whether the bill covered "the San Fransisco-type murder problem . . . that is, the motiveless, thrill-killing murders." The bill's sponsor replied that this type of murder would fall under the "at random and without apparent motive" aggravator. The committee then decided to include the aggravator in the bill. There is no indication that the Legislature intended the aggravator to apply to unnecessary killings in the course of a robbery.[34]

Finally, we recognized that another statutory aggravator, set forth at NRS 200.033(4), already applied to killings connected with robberies, "[r]egardless of whether the murder was necessary to complete the robbery."[35] Thus, we concluded that *Bennett I* and its offspring had "strayed too far from the plain meaning of NRS 200.033(9)," and we therefore overruled that line of cases.[36]

Next, Bennett brought a successive and untimely challenge to the finding of the NRS 200.033(9) aggravator in his case. On appeal from the district court's grant of relief, we affirmed. In our

---

[31]*Id.* at 780, 59 P.3d at 445.

[32]*Id.* at 780-81, 59 P.3d 445-46.

[33]*Id.* (citations omitted).

[34]*Id.* at 781, 59 P.3d at 446 (citations omitted).

[35]*Id.*

[36]*Id.*

opinion in *Bennett III,* filed the same day as *Clem II,* we recognized that *Leslie II* "overruled our 1990 decision in Bennett's case" with respect to the reach of the statutory aggravator.[37] We then concluded that Bennett was actually innocent of the aggravator and this, combined with the prejudicial impact of other cognizable error, so undermined the reliability of the jury's death verdict that application of the procedural bars would result in a fundamental miscarriage of justice.[38]

We did not explicitly address in *Leslie II* or in *Bennett III* the issue of whether the corrected interpretation of NRS 200.033(9) applied retroactively to the defendants' cases. Moreover, in *Bennett III,* we declined to apply the law of the case doctrine to uphold *Bennett I,* the decision that we expressly overruled in *Leslie II.*[39] However, implicit in our discussion in *Leslie II,* as with *Bennett III,* is our determination that *Leslie II* clarified an erroneous interpretation of NRS 200.033(9) as it applied when Leslie and Bennett's convictions became final. Under these circumstances, and consistent with our decision in *Clem II,* retroactivity of *Leslie II*'s corrected interpretation of NRS 200.033(9) was not an issue.[40] Under the corrected interpretation of the aggravator, both defendants had been penalized for conduct that NRS 200.033(9), as properly interpreted, did not address.[41]

Appellants' cases here do not present circumstances similar to those in Leslie's and Bennett's cases. We had clearly rejected in *Bridgewater* the proposition that *Zgombic* merely clarified the law that existed at the time appellants' convictions became final. *Bridgewater* held instead that *Zgombic*'s adoption of a narrower test was a new, unforeseeable, and nonconstitutional decision.[42] As we explained in *Clem II,* "by deciding that *Zgombic* announced new law, we determined, *a fortiori,* that *Zgombic* announced a change in (versus a clarification of) the law."[43] We concluded in *Clem II,* after extensive consideration of appellants' arguments, that appellants failed to demonstrate error in the law of the case or to otherwise overcome the procedural bars applicable to their claims.[44]

[37]119 Nev. at 597, 81 P.3d at 6.

[38]*Id.* at 597-98, 81 P.3d at 6-7.

[39]*Id.* at 597, 81 P.3d at 6.

[40]*See Clem II,* 119 Nev. at 623-24, 81 P.3d at 527 (recognizing that under *Fiore,* 531 U.S. at 228, where a state court decision merely clarifies what a statute meant at the time a defendant's conviction became final, the decision does not create new law and retroactivity is not an issue).

[41]*See Clem II,* 119 Nev. at 623-24, 81 P.3d at 527.

[42]109 Nev. at 1161, 865 P.2d at 1167.

[43]119 Nev. at 624, 81 P.3d at 528.

[44]*Id.* at 620-30, 81 P.3d at 525-32.

Appellants' current attempt to reargue the issue does not provide a basis for rehearing, and they have failed to show that our decision in *Clem II* overlooked or misapplied controlling authority.

## CONCLUSION

For the reasons stated above, we deny rehearing.