149 P.3d 33 (2006)
Johnnie MITCHELL, Appellant,
v.
The STATE of Nevada, Respondent.
No. 45341.
Supreme Court of Nevada.
December 21, 2006.
*34 Franny A. Forsman, Federal Public Defender, and John C. Lambrose and Anne R. Traum, Assistant Federal Public Defenders, Las Vegas, for Appellant.
George Chanos, Attorney General, Carson City; David J. Roger, District Attorney, and *35 James Tufteland and Victoria A. Villegas, Chief Deputy District Attorneys, Clark County, for Respondent.
Before the Court En Banc.

OPINION
PER CURIAM.
In this appeal, appellant Johnnie Mitchell contends that the district court erred in rejecting claims presented in his post-conviction petition for a writ of habeas corpus alleging, in part, that his conviction for attempted murder with the use of a deadly weapon as an aider and abettor should be vacated in light of our decision in Sharma v. State.[1] Our decision in Sharma was issued after Mitchell's conviction became final. Thus, we consider as a matter of first impression whether Sharma applies to convictions that became final before Sharma was decided. We conclude that it does and that Mitchell's conviction for attempted murder with the use of a deadly weapon must be vacated. We further conclude that the district court did not err in rejecting as procedurally barred Mitchell's claims that (a) he was not guilty of the deadly weapon enhancement to his robbery conviction, and (b) the trial court should have sua sponte instructed the jury on the definition of the use of a deadly weapon. We therefore affirm the district court's ruling on those two claims.

FACTS AND PROCEDURAL HISTORY
Mitchell's conviction arose from his participation in the armed robbery of a casino in 1993. Four men, including Mitchell and Donathan Smith, were inside the casino when a security guard, Colin "Buddy" Keel, asked them for identification because he thought they looked underage. When the four men failed to produce identification, Keel told them to leave and began escorting them out of the casino. Mitchell and two of the men walked in front of Keel, who walked beside Smith. As they were walking, Smith pulled out a gun and pointed it at Keel's head. Keel attempted to grab the weapon, and a struggle ensued, during which Smith was shot in the leg and fell to the ground, taking the gun with him. Keel, who was unarmed and had dropped his radio during the struggle with Smith, ran toward the security office to get another radio. Smith fired two shots at Keel as Keel was running to the office and returning to the scene, but neither shot struck Keel.
In the meantime, two of the four men jumped onto the casino's cashier counter and climbed through the cashier's windows. The cashier's cage was at that time occupied by one cashier. The two men, at least one of whom was armed, took money from the cash registers. The fourth man stayed outside the cashier's cage. The trial testimony was conflicting on whether Mitchell was the unarmed fourth man, or whether he was armed and jumped into the cage. After obtaining the money, Mitchell, Smith, and the other two men fled the scene. As a result of these events, Mitchell was charged with aiding and abetting attempted murder with the use of a deadly weapon, aiding and abetting robbery with the use of a deadly weapon, burglary while in possession of a firearm, possession of a firearm by an ex-felon, and conspiracy to commit robbery. He was convicted of all charges, except the charge of possession of a firearm by an ex-felon, although he admitted to being an ex-felon.
On direct appeal, this court affirmed Mitchell's conviction.[2] Mitchell then filed a post-conviction petition for a writ of habeas corpus, which was denied by the district court. This court affirmed the district court's denial of that petition.[3] Mitchell is now before this court on appeal of the district court's dismissal of his second post-conviction petition for a writ of habeas corpus.

DISCUSSION
Procedural bars and laches
A post-conviction petition for a writ of habeas corpus must be filed within one year *36 after the entry of the judgment of conviction or, if a timely appeal is taken from the judgment, within one year after this court issues its remittitur.[4] Further, a second or successive petition must be dismissed if it fails to allege new or different grounds for relief and the prior determination was on the merits, or, if new and different grounds are alleged, the petitioner's failure to allege them in the prior petition(s) constitutes an abuse of the writ.[5] A petitioner can overcome the bar to an untimely or successive petition by showing good cause and prejudice.[6]
Even when a petitioner cannot show good cause sufficient to overcome the bars to an untimely or successive petition, habeas relief may still be granted if the petitioner can demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."[7] "`[A]ctual innocence' means factual innocence, not mere legal insufficiency."[8] The conviction of a petitioner who was actually innocent would be a fundamental miscarriage of justice sufficient to overcome the procedural bars to an untimely or successive petition.
In addition to the procedural bars to an untimely or successive petition, a petition may be dismissed if delay in the filing of the petition prejudices the State in its ability to conduct a retrial of the petitioner, unless the petitioner can demonstrate that a fundamental miscarriage of justice occurred in the proceedings resulting in the petitioner's conviction.[9]
Mitchell filed his petition more than five years after this court issued its remittitur in his direct appeal. Thus, his petition was untimely. Further, Mitchell had already sought relief through a post-conviction petition for a writ of habeas corpus, and thus, the petition was also successive. In addition, the elapsed time between Mitchell's conviction and his filing of the instant petition presumably prejudiced the State in its ability to conduct a retrial.[10] Relying on these facts, the district court dismissed Mitchell's petition, ruling that Mitchell had failed to show good cause and prejudice sufficient to overcome the procedural bars. As will be discussed more fully below, we conclude that Mitchell can demonstrate a fundamental miscarriage of justice, i.e., that he is actually innocent of aiding or abetting attempted murder with the use of a deadly weapon, and has therefore overcome the procedural bars to that claim.
Attempted murder with the use of a deadly weapon
Mitchell claims that his conviction of attempted murder as an aider or abettor is improper because he did not have the specific intent that Keel be killed and thus was actually innocent of that charge. Mitchell raised this argument in his direct appeal. We have previously stated that, once we have ruled on the merits of an issue, the ruling is the law of the case and the issue will not be relitigated.[11] However, we have also held that when a holding in a defendant's direct appeal is overruled in a subsequent case, the doctrine of the law of the case should not be applied, because "to do so would unfairly impose a legal application upon [the defendant] which we expressly overruled, citing to our published opinion disposing of his direct appeal."[12] In deciding Sharma, we cited our decision in Mitchell's direct appeal (Mitchell v. State) and discussed it at some length, specifically overruling its holding. Thus, we *37 decline to apply the law of the case doctrine to Mitchell's attempted murder claim.
NRS 195.020, Nevada's aiding and abetting statute, does not specify what mental state is required to be convicted as an aider or abettor. However, in Tanksley v. State, this court held that a defendant charged with aiding or abetting a specific intent crime had to knowingly and intentionally aid another to commit the charged crime.[13] In Keys v. State, we had also held that attempted murder was a specific intent crime, requiring the deliberate intention to kill.[14] The logical deduction required by these cases mandated that, under case law at the time of the robbery, Mitchell could have only been guilty of attempted murder if he specifically intended to aid Smith in killing Keel and if he specifically intended that Keel be killed.
Nevertheless, in deciding Mitchell's direct appeal, we adopted the "natural and probable consequences" doctrine, and held that "a conviction for attempted murder will lie even if the defendant did not have the specific intent to kill provided the attempted murder was the natural and probable consequence of the aider and abettor's target crime."[15] In this case, the target crime of Mitchell, the aider and abettor, was robbery, and we concluded that "a conviction for attempted murder will lie even if the defendant did not have the specific intent to kill provided the attempted murder was the natural and probable consequence of the aider and abettor's target crime."[16] Four years later, we cited and discussed Mitchell's adoption of the natural and probable consequences doctrine in Sharma.[17] We noted that the doctrine had been "harshly criticized" as "`incongruous and unjust because it imposes accomplice liability solely upon proof of foreseeability or negligence when typically a higher degree of mens rea is required of the principal.'"[18] We concluded that the doctrine was "unsound" and "`inconsistent with more fundamental principles of our system of criminal law'" and with "those Nevada statutes that require proof of a specific intent to commit the crime alleged."[19] Following a discussion of Mitchell, we specifically "disapproved and overruled" Mitchell to the extent it endorsed the natural and probable consequences doctrine.[20]
Mitchell now argues that the holding in Sharma should be applied to him and should result in the vacatur of his conviction for attempted murder. We agree.
Mitchell is entitled to the vacatur of his attempted murder conviction pursuant to Sharma if Sharma applies to cases that were final when it was decided, as Mitchell's was. The inquiry begins with whether Sharma announced a new rule or merely clarified the law.[21] In Colwell v. State, this court set forth guidelines for determining whether a decision announces a new rule or merely clarifies the law:
There is no bright-line rule for determining whether a rule is new, but there are basic guidelines to follow. . . . "When a decision merely interprets and clarifies an existing rule . . . and does not announce an altogether new rule of law, the court's interpretation is merely a restatement of existing law." Similarly, a decision is not new if "it has simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law." . . . However, a rule is new, for example, when the decision announcing it overrules precedent, "or disapprove[s] *38 a practice this Court had arguably sanctioned in prior cases, or overturn[s] a longstanding practice that lower courts had uniformly approved."[22]
We conclude that, although Sharma overruled Mitchell, Sharma did not announce a new rule, but merely clarified the law. In adopting the natural and probable consequences doctrine in Mitchell, we stated that we were "clarify[ing]" whether aiding and abetting could establish the requisite specific intent for an attempted murder charge.[23]Sharma overruled Mitchell not to announce a new rule, but to expressly disavow Mitchell's "clarification" of the law and to itself properly clarify what the law was when Mitchell was charged and tried.[24] Thus, Sharma was a clarification of the law, not a new rule, and it should therefore be applied to Mitchell.[25]
Accordingly, under Sharma, Mitchell should not have been convicted of attempted murder as an aider or abettor unless he, not just Smith, had the specific intent that Keel be killed. In its closing argument to the jury, the prosecutor acknowledged that Mitchell did not have the specific intent to kill, stating, "It wasn't Johnnie Mitchell's intent that [Keel] was going to be shot. It just so happened that way. Like every heist you just can't expect what will happen." We hold the State to its conclusion. Mitchell lacked the requisite specific intent to kill; thus, he was actually innocent of attempted murder with the use of a deadly weapon, and we vacate his conviction of that charge.
Deadly weapon enhancement to the robbery charge
Mitchell also claims that he is actually innocent of the deadly weapon enhancement to the robbery charge and that his conviction of the enhancement should be vacated. Mitchell raised this claim in his direct appeal, but we rejected it. Unlike Mitchell's attempted murder claim, Sharma had no bearing on the propriety of our prior holding. Mitchell has failed to demonstrate that our prior holding affirming the deadly weapon enhancement based on constructive possession was "so clearly erroneous that continued adherence to [it] would work a manifest injustice."[26] Thus, we conclude this claim is barred by the law of the case.[27]
Sua sponte jury instruction
Finally, Mitchell claims the trial court erred by failing to sua sponte give a jury instruction defining the "use" of a deadly weapon. This claim was waived by Mitchell's failure to argue it in his direct appeal.[28] Mitchell raises no facts to demonstrate good cause and prejudice sufficient to overcome his failure.[29] Mitchell also failed to demonstrate he was actually innocent of the enhancement;[30] *39 the testimony on whether Mitchell was armed during the robbery was in conflict, and, as we stated in Mitchell's direct appeal and reaffirmed above, the jury could have found that Mitchell had constructive possession of a weapon during the robbery. Thus, we conclude this claim was waived.

CONCLUSION
We conclude that Sharma clarified the law and therefore applies to cases that were final when it was decided. In light of the State's concession at trial that Mitchell lacked the specific intent to kill, our holding in Sharma requires that Mitchell's conviction for attempted murder with the use of a deadly weapon be vacated. We further conclude that Mitchell's claim that he is actually innocent of the deadly weapon enhancement to the robbery conviction is barred by the law of the case and his claim that the district court erred by failing to sua sponte instruct the jury on the definition of the use of a deadly weapon is procedurally barred.
Accordingly, we affirm in part and reverse in part the district court's order dismissing Mitchell's petition, and we remand this matter to the district court with instructions to vacate Mitchell's conviction for attempted murder with the use of a deadly weapon.
BECKER, J., concurring in part and dissenting in part.
I concur that our holding in Sharma v. State[1] represented a clarification of our existing cases regarding aiding and abetting liability and it should therefore be applied retroactively. I also concur that given the State's acknowledgement during Mitchell's direct appeal that Mitchell did not intend to aid and abet in a murder or attempted murder his conviction for attempted murder must be vacated.[2] However, I dissent from the language in the opinion that suggests one must have the specific intent to kill, rather than the Sharma language that one must have the specific intent to aid and abet in the charged crime for which principal liability is being applied. I also dissent from the commentary in footnote 25 with respect to the Teague/Colwell framework. I believe that the court is misapplying and misinterpreting the limited retroactivity rules set forth in Colwell v. State[3] and Schriro v. Summerlin.[4] I conclude that, if the holding in Sharma was a new rule, it was not substantive and did not meet the exceptions to non-retroactivity for a procedural rule.
NOTES
[1] 118 Nev. 648, 56 P.3d 868 (2002).
[2] Mitchell v. State, 114 Nev. 1417, 971 P.2d 813 (1998), overruled in part by Sharma v. State, 118 Nev. 648, 56 P.3d 868 (2002).
[3] Mitchell v. State, Docket No. 38359, 118 Nev. 1128, 106 P.3d 1243 (Order of Affirmance, July 11, 2002).
[4] NRS 34.726(1).
[5] NRS 34.810(2).
[6] NRS 34.726(1); NRS 34.810(3).
[7] Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); see also Mazzan v. Warden, 112 Nev. 838, 842, 921 P.2d 920, 922 (1996).
[8] Bousley v. United States, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)).
[9] NRS 34.800(1).
[10] See NRS 34.800(2).
[11] See Pellegrini v. State, 117 Nev. 860, 879, 34 P.3d 519, 532 (2001).
[12] State v. Bennett, 119 Nev. 589, 597, 81 P.3d 1, 6 (2003).
[13] 113 Nev. 844, 849-50, 944 P.2d 240, 243 (1997).
[14] 104 Nev. 736, 740, 766 P.2d 270, 273 (1988).
[15] Mitchell, 114 Nev. at 1427, 971 P.2d at 820.
[16] 114 Nev. at 1427, 971 P.2d at 820.
[17] 118 Nev. at 653-54, 56 P.3d at 871.
[18] Id. at 654, 56 P.3d at 871 (quoting Audrey Rogers, Accomplice Liability for Unintentional Crimes: Remaining Within the Constraints of Intent, 31 Loy. L.A. L.Rev. 1351, 1361 & n. 33 (1998)).
[19] Id. at 654, 655, 56 P.3d at 871, 872 (citations omitted).
[20] Id. at 655, 56 P.3d at 872.
[21] See Clem v. State (Clem II), 119 Nev. 615, 81 P.3d 521 (2003).
[22] 118 Nev. 807, 819-20, 59 P.3d 463, 472 (2002) (footnotes omitted).
[23] Mitchell, 114 Nev. at 1426, 971 P.2d at 819.
[24] This is distinguishable from cases such as Bridgewater v. Warden, 109 Nev. 1159, 865 P.2d 1166 (1993), in which this court held that the definition of "deadly weapon" stated in Zgombic v. State, 106 Nev. 571, 798 P.2d 548 (1990), was not retroactive because it announced a new definition and overruled the prior definition of Clem v. State (Clem I), 104 Nev. 351, 760 P.2d 103 (1988), which had been the court's first attempt at interpreting the deadly weapon enhancement statute. See Clem v. State (Clem III), 120 Nev. 307, 91 P.3d 35 (2004).
[25] Under the Teague/Colwell framework, even if we were to conclude that Sharma announced a new rule, it would be retroactive because, by requiring that the jury be correctly informed of the elements of the offense, Sharma "establishes a procedure without which the likelihood of an accurate conviction is seriously diminished." Colwell, 118 Nev. at 820, 59 P.3d at 472. As the Supreme Court noted in Schriro v. Summerlin, 542 U.S. 348, 352 & n. 4, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), rules like that of Sharma, which address the elements of an offense, are perhaps more accurately characterized as new substantive rules, which are generally applied retroactively, not as new procedural rules that are applied retroactively only if they fall under an exception to the general bar on retroactive application of new procedural rules. Thus, whether Sharma's rule is considered procedural or substantive, it would be retroactive.
[26] Clem II, 119 Nev. at 620, 81 P.3d at 525.
[27] See Pellegrini, 117 Nev. at 879, 34 P.3d at 532.
[28] See NRS 34.810(1)(b)(2).
[29] See NRS 34.810(3); NRS 34.810(1)(b).
[30] See Murray, 477 U.S. at 496, 106 S.Ct. 2639; see also Mazzan, 112 Nev. at 842, 921 P.2d at 922; Bousley, 523 U.S. at 623-24, 118 S.Ct. 1604.
[1] 118 Nev. 648, 56 P.3d 868 (2002).
[2] Absent this concession, I submit that there was sufficient circumstantial evidence to support a finding that he intended to aid and abet in attempted murder after he continued to participate in the armed robbery after Smith started shooting.
[3] 118 Nev. 807, 59 P.3d 463 (2002).
[4] 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).