134 Nev., Advance Opinion 35

# IN THE SUPREME COURT OF THE STATE OF NEVADA

RANDOLPH MOORE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 66652

**FILED**

MAY 17 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

*Affirmed.*

Rene L. Valladares, Federal Public Defender, and Randolph M. Fiedler and Tiffani D. Hurst, Assistant Federal Public Defenders, Las Vegas, for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Steven S. Owens, Chief Deputy District Attorney, Clark County, for Respondent.

BEFORE CHERRY, GIBBONS, PICKERING, HARDESTY, PARRAGUIRRE and STIGLICH, JJ.[1]

---

[1]The Honorable Michael Douglas, Chief Justice, did not participate in the decision of this matter.

18-18812

*OPINION*

PER CURIAM:

The district court denied appellant Randolph Moore's postconviction petition for a writ of habeas corpus as procedurally barred without conducting an evidentiary hearing. We affirm.[2]

Moore was convicted of first-degree murder and sentenced to death for his involvement in killing his friend Dale Flanagan's grandparents. *See Flanagan v. State*, 112 Nev. 1409, 1412, 930 P.2d 691, 693 (1996). Moore filed the postconviction petition at issue in this case on September 19, 2013, more than one year after remittitur issued from his direct appeal. Thus, the petition was untimely filed. *See* NRS 34.726(1). The petition was also successive because Moore had previously sought postconviction relief. *See* NRS 34.810(1)(b); NRS 34.810(2). Accordingly, the petition was procedurally barred absent a demonstration of good cause and prejudice. *See* NRS 34.726(1); NRS 34.810(1)(b), (2), (3). Moreover, because the State pleaded laches, Moore was required to overcome the presumption of prejudice to the State. *See* NRS 34.800(2).

To overcome the procedural bars, Moore argues that: (1) the State's withholding of impeachment evidence violated *Brady v. Maryland*, 373 U.S. 83 (1963), (2) his attorneys were ineffective throughout the

---

[2]We previously issued our decision in this matter in an unpublished order. Cause appearing, we grant the State's motion to reissue the order as an opinion, *see* NRAP 36(f), and issue this opinion in place of our prior order.

 

litigation of his prior postconviction petition, and (3) he is actually innocent of the death penalty.[3]

*Brady v. Maryland*

Moore claims that the State violated *Brady* by failing to disclose evidence that would have impeached a witness who testified at his trial, Angela Saldana.[4] There are three components to a successful *Brady* claim: "the evidence at issue is favorable to the accused; the evidence was withheld by the state, either intentionally or inadvertently; and prejudice ensued, i.e., the evidence was material." *Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000). When a *Brady* claim is raised in the context of a procedurally barred postconviction petition, the petitioner has the burden of demonstrating good cause for his failure to present the claim earlier and actual prejudice. *State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003). As a general rule, "[g]ood cause and prejudice parallel the second and third *Brady* components; in other words, proving that the State withheld the evidence generally establishes cause, and proving that the withheld evidence was material establishes prejudice." *Id.*

Before discussing this claim in more detail, we note that it is inadequately pleaded. Before trial, the parties knew that Saldana had been working with law enforcement and her uncle, Robert Peoples, in order to obtain information about the murders. Since then, Moore has consistently

---

[3]We reject Moore's request to remand this matter for the district court to make better findings regarding the procedural bars.

[4]Moore also argues that first postconviction counsel was ineffective for failing to uncover the evidence supporting his *Brady* claim. However, he provides no explanation as to how a reasonable postconviction attorney would have uncovered the evidence, and for the reasons explained below, the *Brady* claim fails.

 

challenged Saldana's role in the case. Although he alleges in his opening brief that he has recently discovered new facts putting the claim in a different light, he fails to identify with specificity which facts this court previously considered and which facts are new. Moore actually asserts that he is under *no obligation* to "distinguish between 'new' facts and facts which were known and previously presented." He is mistaken, as he bears the burden of demonstrating that relief is warranted, which means he must explain why he is raising this claim again, or if it is new, why he did not raise it sooner. *See* NRS 34.810; NRS 34.810(1)(b). He also bears the burden of demonstrating that the district court erred, which means he must demonstrate that the State withheld material evidence and that he raised the claim within a reasonable time. *State v. Huebler*, 128 Nev. 192, 198 n.3, 275 P.3d 91, 95 n.3 (2012). Meeting these burdens requires being forthright: a party cannot force the district court to hold an evidentiary hearing by withholding information about a claim. *See Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984) (recognizing that a petitioner is entitled to an evidentiary hearing regarding his claim if it is not belied by the record and, if true, would warrant relief).

Moore provided some clarity at oral argument in this court. Considering those assertions along with those raised in his opening brief, what forms the basis of his *Brady* claim is apparently the notion that rather than being a willing participant in the investigation into Moore's codefendant as previously believed, Saldana was forced to participate against her will and was fed information by Peoples, who had access to police reports. Assuming, without deciding, that Moore raised this claim within a reasonable time, we nevertheless conclude that he fails to demonstrate that relief is warranted.

 

Accepting Moore's assertions as true, evidence that Peoples coached and coerced Saldana's testimony constitutes favorable evidence, *see United States v. Scheer*, 168 F.3d 445, 449 (11th Cir. 1999) (holding that by "withholding information regarding the prosecutor's threatening remarks to a key prosecution witness, the government failed to divulge material impeachment evidence that was, in essence, exculpatory by virtue of its ability to cast substantial doubt on the credibility of the witness"); *see also Hunter v. State*, 29 So. 3d 256, 269 (Fla. 2008) (evidence that the State threatened a witness with a life sentence if she failed to testify against the defendant satisfied the first two prongs of *Brady*), in the State's possession.[5] However, we conclude that the allegedly withheld evidence is not material. Moore asserts that the evidence was material because the State needed Saldana's testimony to corroborate the other witnesses' testimony pursuant to NRS 175.291 (requiring corroboration for accomplice testimony). But an accomplice is defined as one who is liable for the identical offense charged against the defendant, NRS 175.291(2), and several of the witnesses who testified against Moore were not liable for first-degree murder; further, impeaching Saldana would not have eliminated her testimony, and therefore, it still could have been used to corroborate the other witnesses.

Regardless, materiality for the purposes of *Brady* focuses on whether the withheld evidence might create a reasonable doubt in the mind

---

[5]We note that Moore summarily concludes that the State possessed this evidence because "an investigator with the Clark County District Attorney's office was very involved with Mr. Peoples in coercing Ms. Saldana," but he admits that the investigator was not involved at all stages of the alleged coercion campaign and that the investigator and the other actors involved were acting outside of their official capacities. Nevertheless, because the district court did not hold an evidentiary hearing on this claim, we will assume that the evidence was in the State's possession.

 

of the jury, *Wearry v. Cain*, ___ U.S. ___, ___, 136 S. Ct. 1002, 1006 (2016) ("Evidence qualifies as material when there is any reasonable likelihood it could have affected the judgment of the jury." (internal quotation marks omitted)); *Huebler*, 128 Nev. at 202, 275 P.3d at 98 ("Normally, evidence is material if it creates a reasonable doubt." (internal quotation marks omitted)), not whether it implicates a state statute requiring corroboration. Applying that test, Moore's claim still fails. Saldana's secondhand testimony was not a crucial part of the State's case. In contrast, numerous witnesses testified that they observed Moore plan, commit, and confess to the murders, including witnesses who participated in the killings. *See generally Turner v. United States*, ___ U.S. ___, ___, 137 S. Ct. 1885, 1894 (2017) (concluding that withheld evidence was not material when it would have required the jury to believe that two witnesses falsely confessed even though their testimony was "highly similar" to that of other witnesses). Impeaching Saldana would not have undermined this testimony. In light of this, Moore seems to acknowledge that he played a role in the crime and that the jury would have so concluded even if the allegedly withheld evidence was presented to impeach Saldana, but he argues that it might have led to a different penalty determination because it might have caused the jury to doubt the *level* of his involvement or the *motive* behind the murders. Moore fails to demonstrate that the withheld evidence would have affected the outcome of the penalty hearing as it does not affirmatively undermine the evidence presented to the jury as to Moore's involvement, the motive for the murders, or the aggravating circumstances.

For all of these reasons, we conclude that the district court did not err by denying this claim without conducting an evidentiary hearing.

*Ineffective assistance of postconviction counsel*

Moore contends that he demonstrated good cause and prejudice to excuse the procedural bars because postconviction counsel was ineffective. Because a petitioner sentenced to death is entitled to the appointment of counsel for his first postconviction proceeding, *see* NRS 34.820(1), he is entitled to the effective assistance of that counsel, and a meritorious claim that postconviction counsel was ineffective can provide cause to excuse the procedural bars, *Crump v. Warden*, 113 Nev. 293, 304-05, 934 P.2d 247, 253 (1997).[6]

*Mitigating evidence regarding Moore's upbringing*

Moore argues that postconviction counsel should have found evidence to support the claim that trial counsel was ineffective for failing to present mitigating evidence regarding Moore's background. Moore fails to demonstrate deficient performance. *See Crump*, 113 Nev. at 304 & n.6, 934 P.2d at 254 & n.6 (applying the deficiency-and-prejudice test of *Strickland v. Washington*, 466 U.S. 668 (1984), to postconviction counsel). Although he provides a colorful narrative of his life, including quotes from witnesses and citations to the record, he routinely fails to identify who the witnesses are or how they came to know something about him. Having reviewed the included declarations, it seems these derelictions were intentional. Many of the alleged witnesses appear to have had little to no involvement in Moore's life, and he provides no explanation as to why a reasonable postconviction attorney conducting a reasonable investigation would have

---

[6]We note that the district court incorrectly concluded that some of Moore's ineffective-assistance-of-postconviction-counsel claims were not raised within a reasonable time, as these claims were not available until the first postconviction proceedings concluded.

 

sought them out. *See Rompilla v. Beard*, 545 U.S. 374, 383 (2005) ("[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up."). Thus, although Moore has apparently uncovered many witnesses over the last several decades, he fails to demonstrate that postconviction counsel acted unreasonably by failing to do the same. *See In re Reno*, 283 P.3d 1181, 1211 (Cal. 2012) ("[T]he mere fact that new counsel has discovered some background information concerning a defendant's family, educational or medical history that was not presented to the jury at trial in mitigation of penalty is insufficient, standing alone, to demonstrate prior counsel's actions fell below the standard of professional competence.").

Moore also fails to demonstrate prejudice. Trial counsel presented similar evidence about the same mitigating themes. Although no one testified about Moore's mother's contribution to his problematic childhood, and his drug use was only casually referenced, the jury heard about his difficult upbringing, the lack of a father figure, the traumatic deaths of his loved ones, and his compromised thinking around the time of the murders. Additional evidence might have provided more details about Moore's life, but it would not have altered the picture of Moore that trial counsel presented in any meaningful way. *See Wong v. Belmontes*, 558 U.S. 15, 23 (2009) (denying relief where the sentencing jury was aware of the defendant's background and "[a]dditional evidence on these points would have offered an insignificant benefit, if any at all").

*Mitigating evidence in the form of expert testimony*

Moore argues that postconviction counsel should have presented mitigating testimony from experts. Moore fails to demonstrate deficient performance and prejudice. Although he correctly points out that

postconviction counsel faulted trial counsel for not presenting such testimony, Moore fails to demonstrate that the challenge to trial counsel's performance would have succeeded as he points to nothing in the record which establishes that trial counsel should have suspected that his mental health was at issue at the time. *See generally Riley v. State*, 110 Nev. 638, 650-51, 878 P.2d 272, 280 (1994) (explaining that trial counsel was not ineffective for failing to have the defendant psychologically evaluated despite indications that the defendant had previously been hospitalized and had abused drugs); *see also Davis v. Singletary*, 119 F.3d 1471, 1475 (11th Cir. 1997) ("[T]he mere fact a defendant can find, years after the fact, a mental health expert who will testify favorably for him does not demonstrate that trial counsel was ineffective for failing to produce that expert at trial."). Further, expert testimony regarding the "humanizing" evidence would merely have added an expert's gloss to the testimony the jury already heard. *See Belmontes*, 558 U.S. at 24. While it may have reinforced the mitigating theme that Moore committed the murders while in a period of emotional tumult, this theme was "neither complex nor technical. It required only that the jury make logical connections of the kind a layperson is well equipped to make." *Id.* We therefore conclude that the district court did not err by denying this claim without an evidentiary hearing.

*Additional expert testimony*

Moore argues that postconviction counsel should have argued that trial counsel was ineffective for failing to hire a criminalist, whose testimony would have cast doubt upon "the authenticity of the testimony regarding the guns, and whether the guns could be connected to the bullets or casings found[ ] at the crime scene." Moore also argues that

SUPREME COURT
OF
NEVADA

(O) 1947A

9

postconviction counsel should have argued that trial counsel was ineffective for failing to hire an expert in substance abuse, whose testimony would have undermined "the mens rea requirement for first-degree murder." Moore fails to demonstrate deficient performance or prejudice; he does not, for example, explain how testimony regarding guns and ammunition was used at trial, what conclusions an expert could have provided that would have changed the result, nor how expert testimony would have shown he did not meet the mens rea requirement for murder. These bare assertions are insufficient to warrant relief and therefore Moore fails to demonstrate that the district court erred by denying this claim without an evidentiary hearing.

*Other ineffective-assistance claims*

Moore also argues that postconviction counsel should have argued that: (1) the prosecutors engaged in repeated misconduct, (2) a penalty-phase juror was not proficient in English, and (3) the trial court failed to change venue. These claims were waived by the time of the first postconviction proceeding because they could have been raised on direct appeal and Moore failed to demonstrate good cause and prejudice for the failure to do so. *See* NRS 34.810(1)(b).[7] Therefore, he fails to demonstrate that the district court erred by denying this claim without conducting an evidentiary hearing.

---

[7]Moore asserts that the district court's failure to appoint an investigator and conduct an evidentiary hearing during the first postconviction proceeding constitutes good cause and prejudice. Any failure on the part of the district court should have been raised on the appeal from the denial of that petition.

*Actual innocence*

Moore contends that the district court erred by denying his petition because he is actually innocent of the death penalty, which may excuse the failure to show good cause. *See Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001). In the death penalty context, actual innocence means that no rational juror would have found Moore eligible for the death penalty. *See Lisle v. State*, 131 Nev. 356, 362, 351 P.3d 725, 730 (2015).

Moore first asserts that he is actually innocent because the aggravating circumstance that the murder was committed by a person who knowingly created a great risk of death to more than one person is invalid on its face and unconstitutional as applied to him. This court has rejected these arguments, *see Flanagan v. State*, 112 Nev. 1409, 1421, 930 P.2d 691, 699 (1996), and Moore provides no cause to reconsider the decisions, *see Lisle*, 131 Nev. at 362, 351 P.3d at 730 (concluding that a petitioner was not entitled to relief on his actual-innocence challenge where he "points to no new evidence supporting his claim of actual innocence with respect to the aggravating circumstance[,] [n]or do his arguments present any issue of first impression as to the legal validity of the aggravating circumstance" (citation omitted)). Moreover, there remains another aggravating circumstance, and therefore, Moore is still eligible for death such that he is not actually innocent of the death penalty. *See id.* at 364, 351 P.3d at 733-34.

Moore also contends that he is actually innocent because this court did not appropriately conduct a reweighing analysis when resolving a prior appeal. This argument constitutes legal innocence rather than factual innocence and does not relate to death eligibility. *See Mitchell v. State*, 122 Nev. 1269, 1273-74, 149 P.3d 33, 36 (2006) ("Actual innocence means factual

 

innocence, not mere legal insufficiency." (internal quotation marks omitted)). Therefore, we conclude that the district court did not err by denying this claim.

*Procedurally-barred claims*

Moore argues that, under a cumulative-error theory, this court must consider other claims which were previously raised and rejected by this court. We disagree. Many of the claims are bereft of legal analysis or citations to controlling authority. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court."). Further, Moore fails to identify the prior proceeding where the claim was raised, the nature of the error this court found, why this court concluded that the error was harmless, and how any error in this proceeding cumulates with the prior error. *See Reno*, 283 P.3d at 1223.[8]

As Moore fails to demonstrate that the district court erred, we affirm the district court's judgment.

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

---

[8]Moore's claim that lethal injection violates the Eighth Amendment is premature. *See McConnell v. State*, 125 Nev. 243, 249, 212 P.3d 307, 311 (2009).